UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LABOR FORCE PARTNERS, LTD;
ROBERT TARTER, D/B/A B&B
CONSTRUCTION; and BBT
ENTERPRISES, LTD., D/B/A
B&B CONSTRUCTION,

      Plaintiffs,

  v.

UNITED STATES OF AMERICA,

      Defendant.

NO. CIV. S-06-0311 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant United States of America's ("defendant") motion to dismiss for lack of subject matter jurisdiction and for improper venue.[1]  Fed. R. Civ. P. 12(b)(1) and 12(b)(3).  By this action, plaintiffs Labor Force Partners, Ltd. ("Labor Force"), Robert Tarter, d/b/a B&B Construction, and BBT Enterprises, Ltd., d/b/a B&B Construction ("plaintiffs") seek extraordinary relief for the return of

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. Local Rule 78-230(h).

1

property seized pursuant to search warrants issued in an ongoing criminal investigation. Specifically, plaintiffs ask the court to grant a pre-indictment motion for return of property under Federal Rule of Criminal Procedure 41(g).

Plaintiffs oppose defendants' instant motion and concurrently seek a preliminary injunction against defendant (see Mot. for P.I., filed April 18, 2006).[2]

Because the court grants, for the reasons set forth below, defendant's motion to dismiss for lack of subject matter jurisdiction, it does not consider defendant's alternative motion (as to plaintiff Labor Force) for dismissal for improper venue or plaintiffs' motion for a preliminary injunction. Those motions are denied as moot since the court declines jurisdiction over this case. Although district courts may entertain a motion for return of property when no criminal proceedings are pending, courts must exercise "caution and restraint" before assuming jurisdiction. Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993).

**BACKGROUND**

Plaintiffs filed this action on February 13, 2006, seeking the return of documents seized by agents of the Internal Revenue Service ("IRS") pursuant to two search warrants, one issued by this court and one issued by the United States District Court for

---

[2] Pursuant to a Minute Order of April 19, 2006, the court denied plaintiffs' request for an order shortening time to hear plaintiffs' motion for preliminary injunction. Because a grant of defendant's motion to dismiss for lack of subject matter jurisdiction would moot plaintiffs' motion, the court set plaintiffs' motion for hearing on the same day that the motion to dismiss was previously set, May 19, 2006.

2

the Central District of California. (Compl., filed Feb. 13, 2006, ¶s 1, 9.)[3] The complaint alleges that IRS agents executed search warrants on the premises of plaintiff Labor Force in Upland, California, and plaintiff B&B Construction in Lincoln, California, on November 30, 2005, and that approximately 125 boxes of documentation were seized as a result of the searches. (Compl. at ¶ 9.) These seized documents are currently being held in Sacramento, California.

    B&B Construction is a concrete contractor which has employed as many as 400 workers. According to the allegations of the complaint, the B&B Construction workers were transferred to "Labor Force Partners" which leased their services back to B&B Construction. The complaint further alleges that some of the employees' earnings were channeled through "Labor Force Partners Trust," purportedly free of FICA and Medicare taxes.

---

[3] Defendant's motion is directed at plaintiffs' original complaint. However, concurrently with their opposition to the motion, plaintiffs filed a first amended complaint to address certain of defendant's jurisdictional arguments. (See Opp'n, filed May 2, 2006, at 9:14-16.) For example, plaintiffs corrected the reference in the complaint to 28 U.S.C. § 1346 as a basis for jurisdiction in this case and instead referred to 28 U.S.C. § 1331 in the first amended complaint. Plaintiffs also referenced in the first amended complaint the Fourth and Fifth Amendments to the United States Constitution as bases for jurisdiction in this case. Nevertheless, these references to additional statutory and constitutional provisions are immaterial to defendant's motion because plaintiffs fail to identify any waiver of the United States' sovereign immunity except for Federal Rule of Criminal Procedure 41(g). Thus, the court's jurisdiction over this action still depends on whether plaintiffs can establish equitable jurisdiction for a pre-indictment action for return of property under Rule 41(g). (FAC, filed May 2, 2006, ¶ 1.) As such, the court refers herein to the original complaint, although the first amended complaint is the operable complaint. Fed. R. Civ. P. 15.

3

1  The primary factual issues underlying this case thus involve
2 the payroll (or purported "trust dividends") of the B&B
3 Construction or Labor Force employees, also known as
4 "trust beneficiaries." The complaint asserts that the court has
5 jurisdiction over this matter under Federal Rule of
6 Criminal Procedure 41(g). Plaintiffs challenge the validity of
7 the search warrants and the legality of the searches and seizures
8 and seek the following relief: (1) an injunction requiring
9 defendant to return all the seized documents, without retention
10 of copies; (2) an injunction requiring defendant to return the
11 portion of the seized documents that is irrelevant to the ongoing
12 criminal investigation, without retention of copies; (3) an
13 injunction requiring defendant to provide reasonable access to
14 the seized documents, including transfer of some of the seized
15 documents to a location closer to Upland, California and return
16 of the originals to plaintiffs; (4) damages for the seizures and
17 retention of documents; and (5) costs and attorneys' fees.

**STANDARD**

19  Federal Rule of Criminal Procedure 41(g) states: "A person
20 aggrieved by an unlawful search and seizure of property or by the
21 deprivation of property may move for the property's return. The
22 motion must be filed in the district where the property was
23 seized." "Although Rule 41(g) is ordinarily used to seek return
24 of property after an indictment is issued, 'district courts have
25 the power to entertain motions to return property seized by the
26 government when there are no criminal proceedings pending against
27 the movant.'" United States v. Kama, 394 F.3d 1236, 1238 (9th
28 Cir. 2005) (quoting Ramsden v. United States, 2 F.3d 322, 324

4

(9th Cir. 1993)). Such pre-indictment motions "'are treated as civil equitable proceedings, and, therefore, a district court must exercise 'caution and restraint' before assuming jurisdiction.'" Id.

In deciding whether to assume jurisdiction, the court must weigh four factors to determine whether the "'balance of equities tilts in favor of reaching the merits' of the Rule 41(g) motion:" (1) whether "'the Government displayed a callous disregard for the constitutional rights of the movant;'" (2) whether "'the movant has an individual interest in and need for the property he wants returned;'" (3) whether "'the movant would be irreparably injured by denying return of the property;'" and (4) whether "'the movant has an adequate remedy at law for the redress of his grievance.'" Id.[4]

**ANALYSIS**

Upon consideration of these factors, for the following reasons, the balance of equities does not support the court's exercise of equitable jurisdiction over this case:

**1.   No "callous disregard" for plaintiffs' rights[5]**

Plaintiffs have not shown that defendant displayed a callous

---

[4] Procedurally, defendant brings the instant motion under Federal Rule of Civil Procedure 12(b)(1), making a "factual attack" on the complaint. Under such circumstances, the court may look beyond the complaint, without having to convert the motion into one for summary judgment, and it also need not presume the truthfulness of plaintiffs' allegations. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

[5] Contrary to plaintiffs' argument "callous disregard" for plaintiffs' constitutional rights remains a factor for consideration even after the 1989 amendments to Rule 41(g). In Ramsden, which postdated the 1989 changes, the Ninth Circuit continued to apply *all* four factors. 2 F.3d at 325.

5

disregard for their constitutional rights in seizing the property at issue. Unlike <u>Ramsden</u> cited above, where the search and seizure was not done pursuant to a search warrant, here, the searches of plaintiffs' premises on November 30, 2005 and the seizures made pursuant thereto were executed pursuant to valid search warrants issued by this court and the Central District Court.

The special agent's affidavit in support of the search warrants amply supports the issuance of the warrants in this case. (Perez Aff. in Supp. of Pls.' P.I. Mot., filed April 18, 2006, Ex. A.) For example, Special Agent Lamb's affidavit outlines widespread abuse by plaintiffs of employee leasing agreements, the failure to withhold and pay federal employment taxes, and the failure to pay over withheld income taxes to the IRS. More specifically, as stated in the affidavit, in 2000, the employees of B&B Construction were informed that henceforth they would be employed by Labor Force and leased back to B&B Construction. In addition, the employees would become beneficiaries of the Labor Force Partners Trust ("LFPT") and would receive a separate check each pay period from LFPT as a dividend. The employees were told that they would make more money because they would not have to pay Social Security and Medicare taxes. According to a former employee of B&B Construction, the employees' work responsibilities did not change under the new lease-back arrangement; the only difference was that the employees received two checks (one from Labor Force and one from LFPT) and no employment taxes were paid on the LFPT check. Although the employees of Labor Force/B&B Construction

purported to receive a beneficial ownership interest in LFPT, they did not participate in the operations of the Trust and their interest was terminated when they left their employment with Labor Force/B&B Construction.  At the end of each year, the employees received a W-2 form for the wages paid by Labor Force and a Schedule K-1 (Form 1041) for the payments made by LFPT. (Id.)

According to the Lamb affidavit, the IRS is investigating whether the LFPT payments were improperly treated as trust distributions instead of wages to avoid withholding and paying federal employment taxes.  The IRS is also investigating LFPT's failure to file Forms 1041, U.S. Income Tax Return for Estates and Trusts, for the tax years 2000 through 2004.  As part of Form 1041, trust distributions to beneficiaries must be disclosed to the IRS on Schedule K-1.  Without a Schedule K-1 from LFPT, the IRS could not verify the trust dividend income reported by the "trust beneficiaries" on their individual income tax returns. According to the Lamb affidavit, LFPT withheld estimated income taxes from its payments to its trust beneficiaries without paying over these funds to the IRS.  The trust beneficiaries later discovered that they were forced to pay a second time the income tax owed (and purportedly withheld by LFPT) to the IRS. (Id.)

Moreover, the catalogs of seized documentation (attached as exhibits to the Tarter and Perez affidavits offered in support of plaintiffs' motion for preliminary injunction) demonstrate that the seized materials relate to the ongoing criminal investigation. (See Tarter Aff., Ex. B; Perez Aff., Ex. B.)  IRS

7

1 agents seized from B&B Construction completed job files, bill
2 receipts, payroll records, bank statements and other financial
3 records, employee files, employee time sheets, employee
4 correspondence, employee tax files, title documents, and computer
5 hard drives.  From the premises of Labor Force, agents seized
6 LFPT earnings reports and records, Labor Force payroll records,
7 employee tax return files, several computers and hard drives,
8 bank records, and correspondence files.  These items are clearly
9 relevant to issues involved in the ongoing investigation,
10 including: "(a) whether 'leased' workers of Labor Force Partners
11 actually functioned as employees of B&B Construction; (b) whether
12 B&B Construction and Labor Force Partners improperly
13 recharacterized wage income as trust distributions to avoid
14 employment tax contributions; (c) whether Labor Force Partners
15 deducted estimated income taxes without transferring those funds
16 to the IRS; and (d) whether Labor Force Partners deliberately
17 failed to report trust distributions to the IRS."  (Def.'s Opp'n
18 to Pls.' P.I. Mot., filed May 2, 2006.)

19      Plaintiffs reliance on United States v. Tweel, 550 F.2d 297
20 (5th Cir. 1977), to argue the invalidity of the subject search
21 warrants, is inapposite.  In Tweel, a criminal defendant bought a
22 motion to suppress evidence obtained through an affirmative
23 misrepresentation by an IRS revenue agent.  The court held that
24 the agent's failure to apprise the defendant of the "obvious
25 criminal nature of the investigation was a sneaky deliberate
26 deception by the agent."  Id. at 299; see also United States v.
27 Bridges, 334 F.3d 1010, 1019-20 (9th Cir. 2003) (applying Tweel
28 and finding that the "failure of an IRS agent . . . to warn a

8

taxpayer that [a civil] audit may have potential criminal ramifications does not render the search unreasonable" because their must be evidence of "some affirmative representation to establish the existence of fraud"). Here, Tweel is inapplicable because the complaint does not allege any *specific* affirmative misrepresentation by IRS agents to plaintiffs or their employees. Plaintiffs' conclusory allegation that IRS agents "intentionally misled" plaintiffs and their employees about pending criminal investigations is insufficient to raise any issue under Tweel or more importantly, to demonstrate a "callous disregard" for their constitutional rights. Moreover, plaintiffs did not proffer any admissible evidence to support a Tweel violation in their motion for preliminary injunction. (See Affidavit of Eric Johnson, filed April 18, 2006.)

Finally, defendant's actions in retaining the seized documents as part of the ongoing criminal investigation are reasonable. See Matter of Search of Kitty's East, 905 F.2d 1367, 1375 n. 8 (10th Cir. 1990) (citing Fed. R. Crim. P. 41 Advisory Committee's Note, 124 F.R.D. 397, 428 (1989) ["If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable."]).

In sum, plaintiffs cannot demonstrate a callous disregard for their constitutional rights by virtue of the execution of the subject search warrants.

**2. Plaintiffs' interest in and need for the documents**

Defendant does not dispute that plaintiffs are the owners of the seized documents at issue, and that at least some of the

9

documents are used by plaintiffs in their ongoing businesses.

### 3. **No irreparable harm to plaintiffs**

However, defendant does dispute that plaintiffs will be irreparably harmed if the documents are not returned to them. Plaintiffs contend they will suffer irreparable harm if the relief sought is not granted because "the seized documentation represents substantially all of the[ir] business records," without which they "will be substantially unable to continue in business." (Compl. at ¶ 13.) In addition, plaintiffs assert that they are unable to challenge civil determinations made by the IRS without the seized documents. (Id.)[6]

However, plaintiffs' allegations ignore the following facts: First, the seized office computers were promptly returned to plaintiffs after the hard drives were copied, and thus, plaintiffs have possession of all their electronic business records. (Lamb Decl. in Supp. of Mot. to Dism., filed April 14, 2006, ¶ 4.) In addition, copies of current employee files and contracts that might be necessary to continue day-to-day operations, as well as the originals of title and insurance documents for several vehicles, have been turned over to plaintiff Tarter. (Id. at ¶s 5, 6.) Special Agent Jason Lamb has also informed plaintiffs' counsel that plaintiffs may arrange to review the other files and make limited copies at *defendant's* expense as reasonably necessary. (Id. at ¶ 5.) Indeed, on

---

[6] It is noteworthy that neither in responding to defendant's motion to dismiss or in their motion for preliminary injunction have plaintiffs specified the precise documents allegedly "necessary" for the continuation of their businesses or to respond to civil tax investigations.

10

several previous occasions, plaintiff Tarter has been granted access to identify documents he may reasonably need, and originals or copies of certain documents he identified were provided to him by defendant. (Id. at ¶s 6.) Finally, defendant has made, and represents that it will continue to make, *all* the seized documents available for copying at plaintiffs' expense. (Id. at ¶ 7.)

Given this reasonable access to the documents, plaintiffs cannot demonstrate irreparable injury.

### 4.  **Plaintiffs have an adequate remedy at law**

Furthermore, if formal criminal proceedings are instituted, plaintiffs will have the opportunity to challenge the legality of the search warrants and seizures in those proceedings. That is the ordinary course of a Rule 41(g) motion, as once a criminal case is initiated, the court's jurisdiction to entertain the motion is not an issue. Ramsden, 2 F.3d at 324. Or, upon the conclusion of the criminal investigation, if no charges are brought, defendant represents the seized property will be returned to plaintiffs. Therefore, plaintiffs have an adequate remedy at law.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the instant action for lack of subject matter jurisdiction is GRANTED. On balance, the court finds that the equities do not support the exercise of jurisdiction over this Federal Rule of Criminal Procedure 41(g) pre-indictment action for return of property. Defendant's alternative motion for dismissal of plaintiff Labor Force's claims for improper venue and plaintiffs'

11

motion for preliminary injunction against defendant are DENIED as moot.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: May 15, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE